UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
LEI YIN,                       )
                               )        CIVIL ACTION
                               )        NO. 14-12255-WGY
              Plaintiff,       )
                               )
        v.                     )
                               )
BIOGEN, INC.,                  )
INTEGRATED RESOURCES, INC.,    )
                               )
              Defendant.       )
_____)
```

MEMORANDUM OF DECISION

YOUNG, D.J.                                    December 4, 2015

## I.   INTRODUCTION

This case arose out of the termination of an at-will employment contract between pro-se plaintiff Lei Yin ("Yin") and Integrated Resources, Inc. ("Integrated"), a staffing agency. Yin brought this suit against Integrated and Biogen, Inc. ("Biogen") seeking backpay for overtime work and damages for physical and emotional injury stemming from his termination. The Court previously dismissed all claims against Integrated as well as several claims against Biogen.  Biogen now seeks summary judgment on the remaining claims pursuant to Federal Rule of Civil Procedure 56.

## II.   PROCEDURAL HISTORY

On or about July 25, 2012, Yin filed a demand for arbitration with the American Arbitration Association in the State of New Jersey against Integrated, Biogen, and several employees of each[1] for wrongful termination and breach of contract.  Def.'s Statement Undisputed Material Facts ("Def.'s Statement Facts"), Ex. 12, ECF No. 147-12.  On January 18, 2013, the arbitrator dismissed all claims against both Biogen and its employees because there was no written arbitration agreement between Biogen and Yin.  Mem. Supp. Mot. Dismiss Pl.'s Compl., Ex. 2, Award ("Arb. Award") 2, ECF No. 30-2.

On August 5, 2013, the arbitrator found that the provision of the employment agreement between Yin and Integrated (the "Agreement") concerning the notice of termination was ambiguous, and agreed with Yin's interpretation that the Agreement required fifteen days' notice prior to termination.  Id. at 5.  With regard to Yin's termination, the arbitrator found that "[t]he credible evidence indicates that [Integrated] terminated the Agreement solely because Biogen expressed dissatisfaction with Yin and elected to cancel the position."  Id. at 3.  The

---

[1] The employees were Gary Gambhir and Vidhu Nijhawan of Integrated, and Susan Kalled, Robin Bolek and Kevin Opitoby of Biogen.  Def.'s Statement Facts, Ex. 12, ECF No. 147-12.

arbitrator awarded Yin fifteen days of severance, which amounted to $5,040.00.  Id. at 5.

Yin then filed a complaint against Biogen and Integrated in the Massachusetts Superior Court sitting in and for the County of Essex on June 11, 2013.  Essex Super. Ct. Case Summ. 1, ECF No. 24.  On April 22, 2014, Yin amended his complaint by adding seventeen claims, including several that arose under federal statutes.  See Am. Compl. 6-14, ECF No. 37.[2]  Biogen and Integrated then filed a joint motion to remove the case to this Court on May 22, 2014.  Notice Removal, ECF No. 1.

On June 27, 2014, Biogen filed a motion to dismiss Yin's amended complaint for failure to state a claim.  Mem. Supp. Def.'s Mot. Dismiss, ECF No. 29.  On the same day, Integrated also filed a motion to dismiss, stating that, inter alia, all of Yin's claims against Integrated were barred by the arbitration award.  Mem. Supp. Def.'s Mot. Dismiss, ECF No. 32.  On September 19, 2014, this Court granted both motions.  Elec. Order, ECF No. 48.

On September 23, 2014, Yin filed a motion for reconsideration.  Mot. Reconsideration, ECF No. 49.  This Court allowed the motion as to the claims against Biogen for breach of

---

[2] Citations to Yin's Amended Complaint are to paragraph numbers where the material cited is contained in the numbered paragraphs in the first six pages of the document; all other citations to the Amended Complaint are to page numbers.

contract, breach of the implied covenant of good faith and fair dealing, quantum meruit, promissory estoppel, wrongful termination, and defamation.  Elec. Order, ECF No. 59.

On August 3, 2015, Biogen moved for summary judgment on the remaining claims.  Def.'s Mot. Summ. J., ECF No. 145.  On October 28, 2015, this Court heard oral argument and subsequently gave Yin thirty days to submit any further data showing the challenged testing methodology constituted a violation of public policy.  Elec. Clerk's Notes, ECF No. 176.  Yin voluntarily eschewed this opportunity, Req. Entering Judge Young's Order, ECF No. 182, and the Court granted Biogen's motion for summary judgment, Judgment, ECF No. 181.

## III. ANALYSIS

Summary judgment is proper where a movant establishes that there is no genuine dispute concerning any material facts and that accordingly, the movant is entitled to judgment as matter of law.  Fed. R. Civ. P. 56(a).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is considered material if it "might affect the outcome of the suit under the governing law." Id.

On a motion for summary judgment, the moving party bears the initial burden of showing a lack of genuine issue of

material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323
(1986).  The burden then "shifts to the nonmoving party, with
respect to each issue on which he has the burden of proof, to
demonstrate that a trier of fact could reasonably find in his
favor."  Sands v. Ridefilm Corp., 212 F.3d 657, 661 (1st Cir.
2000) (internal quotation marks omitted).

In evaluating the factual record, "[c]redibility
determinations, the weighing of the evidence, and the drawing of
legitimate inferences are jury functions, not those of a
judge[.]"  Anderson, 477 U.S. at 255.  Thus, "[t]he evidence of
the non-movant is to be believed, and all justifiable inferences
are to be drawn in his favor."  Id.

**A.  Breach of Contract**

Although the basis of Yin's breach of contract claim is not
entirely clear, two possible arguments can be inferred from his
briefs and deposition: (1) Biogen breached its contract by
terminating Yin because Yin and Biogen entered into an oral
agreement when Biogen assured Yin that the posted job opening
was not for Yin's position; and (2) an employment contract was
formed when Yin signed the documents provided by Biogen during
the initial training at Biogen's headquarters.  Am. Compl. ¶ 4.[3]

---

[3] Yin conceded that he is not suing Biogen based on his
contract with Integrated, since Biogen was not a party to that
contract.  Emergency Mot. Adjust Schedule, Ex. 1, Dep. Lei Yin
("Yin Dep.") 15:5-10, July 14, 2015, ECF No. 155-1.

Biogen argues that Yin's claim for breach of contract fails as matter of law because there is no evidence to support the existence of a valid and binding agreement between Biogen and Yin.  Def.'s Mem. Supp. Mot. Summ. J. 2, ECF No. 146.

In order to prevail on a breach of contract claim under Massachusetts law, a plaintiff must show that "(1) a valid contract between the parties existed, (2) the plaintiff was ready, willing, and able to perform, (3) the defendant was in breach of the contract, and (4) the plaintiff sustained damages as a result." Bose Corp. v. Ejaz, 732 F.3d 17, 21 (1st Cir. 2013) (citing Singarella v. City of Boston, 342 Mass. 385, 387 (1961)).

### 1.   The Oral Employment Agreement

Yin argues Biogen breached an oral contract that ensured Yin could continue his employment after October 2011.  Am. Compl. ¶ 4.  In order to prove that there was an enforceable oral contract, Yin must show that Biogen led him "reasonably to believe [a binding offer] ha[d] been made." Boleman v. Congdon & Carpenter Co., 638 F.2d 2, 4 (1st Cir. 1981) (citing Timmins v. F.N. Joslin Co., 303 Mass. 540, 542 (1939)).  The nature of such an offer "may vary depending on the total circumstances," at least where the words of the offer are not "unambiguously clear." Id. (citing Campion v. Boston & Maine R.R., 269 Mass. 579, 581 (1930)).

Here, Biogen did not make Yin an unambiguous offer to continue his employment after October 2011.  Indeed, Yin has failed to raise a genuine issue of material fact as to whether Biogen orally agreed to continue Yin's employment for any amount of time.  Even viewing the evidence in the light most favorable to Yin, it was not reasonable for Yin to infer, based on the statement of Kalled that she would "look into" Yin's future employment, Yin Dep. 55:1-4, that Biogen was making him a binding offer.  Thus, Yin's claim for breach of contract on the basis of an alleged oral employment agreement fails.

### 2.   Documents Signed During Training

Yin argues that an employment contract was formed when he signed documents during his initial training at Biogen headquarters, <u>see</u> Am. Compl. 9, however, Yin has not presented any evidence regarding such documents.  Thus, this argument cannot survive summary judgment.  <u>See</u> <u>Celotex Corp.</u>, 477 U.S. at 323-324 ("factually unsupported claims" must be disposed of at summary judgment).

### B.   Breach of the Implied Covenant of Good Faith and Fair Dealing

Yin argues that the implied covenant of good faith and fair dealing applies to his relationship with Biogen by virtue of the Biogen documents he signed on the first day of his training at Biogen.  Am. Compl. 9-10.  The implied covenant of good faith

and fair dealing is applicable only where there exists some contract "of which the implied covenant [can] be a part." Levenson v. L.M.I. Realty Corp., 31 Mass. App. Ct. 127, 130 (1991).  Here, because this Court finds there was no enforceable agreement, the implied covenant is inapposite.  Thus, Yin's claim for breach of the implied covenant of good faith and fair dealing necessarily fails.

    C.   **Quantum Meruit**

    Yin also claims he is entitled to recovery under a theory of quantum meruit on the ground that Biogen accepted Yin's valuable services and Yin reasonably expected to be compensated for such services.  See Am. Compl. 13.  Biogen, for its part, argues that there is no evidence to support this proposition. Def.'s Mem. Supp. Mot. Summ. J. 3.

    Quantum meruit recovery may be available in the absence of an enforceable agreement in order to avoid unjust enrichment. J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 794 (1986); see also Salamon v. Terra, 394 Mass. 857, 859 (1985) ("The underlying basis for awarding quantum meruit damages in a quasi-contract case is unjust enrichment of one party and unjust detriment to the other party.").  In order to prevail on a claim for quantum meruit, a plaintiff has to prove "(1) it conferred a measurable benefit upon the defendants; (2) that the [plaintiff] reasonably expected compensation from the defendants; and (3)

that the defendants accepted the benefit with the knowledge,
actual or chargeable, of the claimant's reasonable expectation."
Finard & Co. v. Sitt Asset Mgmt., 79 Mass. App. Ct. 226, 230
(2011); see also Backman v. Smirnov, 751 F.Supp.2d 304, 314 (D.
Mass. 2010) (Stearns, J.).   Among these three factors, "[a] key
factor in the application of the theories of quantum meruit . .
. is the reasonable expectations of the parties."   Tomei v.
Corix Utils. (U.S.) Inc., No. 07-CV-11928DP, 2009 WL 2982775, at
*20 (D. Mass. 2009) (Woodlock, J.) (citing Liss v. Studeny, 450
Mass. 473, 480 (2008)).

Here, even if Yin conferred a benefit on Biogen, he could
have no reasonable expectation of receiving wages or overtime
pay from Biogen for his work there.   Yin's Agreement with
Integrated specified that any compensation due from the work at
Biogen would be paid by Integrated, Exs. Am. Compl. 7, ECF No.
37, and that he would be paid only for hours approved by Biogen,
id. at 5.   Yin agreed to this compensation structure and in fact
received his compensation from Integrated at all times during
his employment.   See Yin Dep. 12:7-13.   There was no evidence
that Yin could reasonably have expected to receive any
compensation from Biogen.   Therefore, Yin's claim for quantum
meruit fails.

D.   **Promissory Estoppel**

Yin argues that Biogen was estopped from terminating him as a result of representations made by Kalled and others indicating that Yin's employment would continue past his July 2011 termination date.  See Am. Compl. 13.  Biogen contends that there is no evidence of a promise of future employment and that Yin's claim for estoppel therefore fails.  See Def.'s Mem. Supp. Mot. Summ. J. 11-13.

A successful claim for promissory estoppel involves:

> (1) A representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made[;] (2) [a]n act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made[; and] (3) [d]etriment to such person as a consequence of the act o[r] omission.

Cellucci v. Sun Oil Co., 2 Mass. App. Ct. 722, 728 (1974) aff'd sub nom. Cellucci v. Sun Oil Co. of Pennsylvania, 368 Mass. 811 (1975).[4]  In the employment context, "an at-will employee asserting estoppel would have to show that she reasonably relied on an unambiguous promise."  Upton v. JWP Businessland, 425 Mass. 756, 760 (1997).

---

[4] While the court in Cellucci did not state that these were the elements of "promissory estoppel," this Court reads Cellucci as applicable to Yin's claim for promissory estoppel here.  See Barrie-Chivian v. Lepler, 87 Mass. App. Ct. 683, 685 (2015) ("Although the court [in Cellucci] did not use the term 'promissory estoppel,' instead referring to 'an estoppel' occasioned by 'detrimental reliance,' the terms are used interchangeably in the case law.").

Here, Yin alleges that Kalled promised that if Yin worked hard and continued to perform, she would attempt to extend his employment.  <u>See</u> Am. Compl. ¶ 2.  Moreover, Yin claims that on the last day of his work at Biogen, Biogen and Integrated assured him that the new opening advertisement was not for Yin's position.  <u>Id.</u> at ¶ 3.

Neither Kalled's statement indicating that she would "look into" Yin's future employment at Biogen, Yin Dep. 55:1-4, nor the assurances concerning the other advertised position, <u>see</u> Exs. Am. Compl. Ex. 1 at 27, ECF No. 37-1, could constitute unambiguous promises sufficient to give rise to a promissory estoppel claim.  <u>See</u> <u>Santoni</u> v. <u>Fed. Deposit Ins. Corp.</u>, 677 F.2d 174, 179 (1st Cir. 1982) ("A mere expression of future intention . . . does not constitute a sufficiently definite promise to justify reasonable reliance thereon.").  Indeed, Yin admitted that he was not sure of his future position at Biogen at least as of the time of the termination.  Yin Dep. 54:19-55:9.  Under these circumstances, he cannot claim he reasonably acted under the assumption that his employment would continue.  <u>Cf.</u> <u>Trifiro</u> v. <u>New York Life Ins. Co.</u>, 845 F.2d 30, 33 (1st Cir. 1988) ("When a person acts in a way contrary to his own acknowledged understanding of the facts, his acts must be deemed unreasonable as a matter of law.").  Accordingly, Yin's claim for promissory estoppel cannot survive summary judgment.

**E.    Wrongful Termination**

Yin claims that he was terminated due to his refusal to follow a certain testing methodology, and that this in turn violated public policy.  Am. Compl. 10.  Biogen contends that Yin's claim is without merit because Yin fails to indicate how Biogen's choice of research methodology implicates any "clearly established public policy[.]"  Def.'s Mem. Supp. Mot. Summ. J. 13-15 (internal quotation marks omitted).

In general, an employer can discharge an at-will employee at any time for any reason.  Upton, 425 Mass. at 757.  A claim for wrongful discharge lies only when the discharge violates "a clearly established public policy."  Id.  Whether the termination violates clearly established public policy is matter of law for the court.  Smith-Pfeffer v. Superintendent of Fernald State Sch., 404 Mass. 145, 151 (1989) (citing Mello v. Stop & Shop Cos., 402 Mass. 555, 561 n. 7 (1988)).  This exception is generally construed narrowly and held to apply only where an employee is terminated for "asserting a legally guaranteed right (e.g., filing workers' compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury)."  Id. at 149-150.  Employees who complain "about internal company policies or the violation of company rules" are not protected, "even though the employees' actions may be

[12]

considered appropriate and 'socially desirable.'"  Falcon v.
Leger, 62 Mass. App. Ct. 352, 362 (2004) (quoting Smith-Pfeffer,
404 Mass. at 151); see also Mello, 402 Mass. at 560-61.  On the
other hand, the public policy exception may apply where an
employee "reasonably, but perhaps erroneously, reports that an
employer is violating State and municipal laws and ordinances
concerning public safety."  Falcon, 62 Mass. App. Ct. at 364.

   Here, there is no dispute that Yin was an at-will employee.
Def.'s Statement Facts ¶¶ 4-7, ECF No. 147.  Thus, Yin can
assert a wrongful discharge claim against Biogen only if he can
show that his termination violated a clearly established public
policy.  On this record, the Court cannot conclude that the
discharge violated clearly established public policy.  Yin has
failed to show that his discharge was attributable to his
insistence on "report[ing], resist[ing], or refus[ing] to
participate in activity that presents a threat to public health
or safety."  Surprise v. Innovation Group, Inc. / First Notice
Sys., Inc., 925 F.Supp.2d 134, 148 (D. Mass. 2013).  On the
contrary, the practices with which Yin took issue related to
Biogen's internal decisions about how to carry out its research
initiatives.  Indeed, the records before this Court support the
conclusion that the research involving Yin at Biogen was purely
exploratory.  See Def.'s Statement Facts, Ex. 2, Aff. Kevin
Otipoby ("Aff. Otipoby") ¶ 4, ECF No. 147-2.  That pointing out

[13]

the tendency for Kalled's methodology to produce false-positives

may have been the "right" thing to do does not grant Yin, as an

at-will employee, protection under the narrow public policy

exception.  See Smith-Pfeffer, 404 Mass. at 150 (declining to

"extend the public policy exception to the at-will doctrine to

cover discharges of employees without just cause if those

employees are performing appropriate, socially desirable

duties.").

**F.   Defamation**

Yin claims that Biogen ought be held liable for defamation

on the basis of its publication of false statements regarding

his job performance.  Am. Compl. 11-13.  Biogen argues that this

claim must fail as matter of law because Yin did not present

evidence that Biogen published a false statement regarding his

work performance to a third party, and further that Biogen's

statements were privileged.  Def.'s Mem. Supp. Mot. Summ. J. 16-

18.

In order to succeed on a defamation claim under

Massachusetts law, a plaintiff must establish that:

> (1) [the defendant] published a defamatory statement
> of and concerning [the plaintiff]; (2) "the statement
> was a false statement of fact (as opposed to opinion);
> (3) [the defendant] was at fault for making the
> statement and any privilege that may have attached to
> the statement was abused; and (4) [the plaintiff]
> suffered damages as a result, or the statement was of
> the type that is actionable without proof of economic
> loss.

Downey v. Chutehall Constr. Co., 86 Mass. App. Ct. 660, 663 (2014).

Here, Biogen's alleged defamatory statements were privileged and therefore are not actionable.  As an initial matter, "[a]n employer has a conditional privilege to disclose defamatory information concerning an employee when the publication is reasonably necessary to serve the employer's legitimate interest in the fitness of an employee to perform his or her job."  Bratt v. Int'l Bus. Machs. Corp., 392 Mass. 508, 509 (1984).  In addition, under Massachusetts law, defamatory statements made in judicial or quasi-judicial proceedings are absolutely privileged.  Fisher v. Lint, 69 Mass. App. Ct. 360, 366 (2007) (defamatory statements made in judicial proceedings absolutely privileged, depending on "the operation and mechanics of the proceeding"); Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 932 (1st Cir. 1983) (applying Massachusetts law and holding that an alleged statement filed with the National Railroad Adjustment Board was absolutely privileged because it occurred "during an adjudicatory proceeding").  Statements made to an administrative authority for investigative purposes are also privileged.  See Mass. Gen. Laws ch. 151A, § 46(a).

To the extent Yin complains about defamatory statements in his personnel file that were communicated to other Biogen

employees, such statements are privileged because Biogen had a legitimate interest in monitoring his performance and making others within the company aware of any concerns.  See McCone v. New England Tel. and Tel. Co., 393 Mass. 231, 235 (1984) (conditional privilege applied to alleged defamatory statements about employee's performance communicated internally to department heads).  Moreover, there is no evidence that Biogen lost the otherwise applicable privilege by "recklessly" disclosing the alleged defamatory material.  See id. at 236.

Yin also cannot successfully claim that statements made in the arbitration proceedings and subsequent litigation constituted actionable defamation.  Indeed, statements made during those proceedings were absolutely privileged because such proceedings are judicial or quasi-judicial in nature.  Any allegedly defamatory statements to the Department of Unemployment Assistance are also protected since these statements were made for investigatory purposes.

**IV.  CONCLUSION**

For the foregoing reasons, on October 28, 2015, this Court GRANTED Biogen's motion for summary judgment, ECF No. 145.


/s/ William G. Young
WILLIAM G. YOUNG
U.S. DISTRICT JUDGE